UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| OPEN DOOR CAPITAL, LLC,<br><br>             Plaintiff,<br><br>  vs.<br><br>SANDELL STARDUST PARK LLC and<br>SUN LAKE ESTATES 2, L.L.C.,<br><br>             Defendants. | Civil Action No. 6:22-cv-15 |

**PLAINTIFF OPEN DOOR CAPITAL, LLC'S COMPLAINT TO REQUIRE PERFORMANCE OF A CONTRACT TO CONVEY REAL PROPERTY**

Plaintiff Open Door Capital, LLC complains of Sandell Stardust Park LLC and Sun Lake Estates 2, L.L.C. and brings this action for specific performance of a contract to convey real property located in Tom Green County, Texas in exchange for the price of $12,750,000.

**THE PARTIES**

1. Plaintiff Open Door Capital, LLC ("Open Door") is a limited liability company organized and existing under the laws of the State of Washington with its principal place of business in the State of Georgia. Open Door's sole member is Brandon Turner, a resident of the State of Hawaii.

2. Defendant Sandell Stardust Park LLC ("Sandell") is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in the State of Texas. Sandell's sole member, Sandell Development, L.L.C., is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in the State of California. Sandell's registered agent for service of process is Rebecca Gay Jones, 2300 W. Pike Blvd., Suite 300, Weslaco, TX 78596.

3. Defendant Sun Lake Estates 2, L.L.C. ("Sun Lake") is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in the State of Texas. Sun Lake's sole member, Sandell Development, L.L.C., is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in the State of California. Sun Lake's registered agent for service of process is Rebecca Gay Jones, 2300 W. Pike Blvd., Suite 300, Weslaco, TX 78596.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

5. There is complete diversity of citizenship between Plaintiff and Defendants.

6. The amount in controversy exceeds $75,000, not counting interests and costs, because Open Door seeks specific performance of a contract to convey real estate for the purchase price of $12,750,000 under which Open Door paid $1,000,000 in earnest money.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the real property in issue is situated in this Judicial District.

## FACTS

8. On January 26, 2022, Open Door, as buyer, entered into a Purchase and Sale Agreement ("Agreement") with Sandell and Sun Lake, as sellers (collectively, "Seller"), for the purchase of certain real property located at 2502 Martin Luther King Boulevard and 3300 Voight Boulevard in the City of San Angelo, Tom Green County, Texas ("Property") for $12,750,000. The Property is more particularly described in paragraph 2 of the Agreement attached hereto as Exhibit A and is, along with its definitions, incorporated herein for all purposes. The Property is a mobile home park.

9. The Agreement requires Open Door to deposit $1,000,000 earnest money into an escrow account within 3 days of signing. *Agreement at ¶ 5.* Open Door deposited the earnest money on January 28, 2022.

10. The Agreement requires Open Door to order a title commitment from the title company within 7 days of the date of the Agreement. *Agreement at ¶ 6.* Open Door ordered the title commitment on the same day of the Agreement, January 26, 2022, and received the title commitment and underlying documents on February 17, 2022.

11. The Agreement requires Seller to provide Open Door certain Due Diligence Materials within 3 days of the effective date of the Agreement. *Agreement at ¶ 12*.

12. Seller did not provide all the Due Diligence Materials required by the Agreement within 3 days.

13. The Agreement provides Open Door 45 days to complete physical and financial inspections of the Property after it receives the Due Diligence Materials. *Agreement at ¶ 12*. Open Door engaged MHC Due Diligence Partners, LLC ("DDP") to assist with the due diligence on the Property.

14. For the financial inspection, Open Door and Seller exchanged emails on February 10-11, 21 and March 4, 8-9, regarding missing Due Diligence Materials required under the Agreement and additional due diligence information requested by Open Door pursuant to the Agreement. Open Door did not receive all of the Due Diligence Materials or the additional information requested as of March 18, 2022.

15. For the physical inspection, on February 15, 2022, DDP emailed Brian Schwartz, Seller's management representative, requesting a meeting in preparation for an onsite visit. DDP

informed Mr. Schwartz that the onsite inspection was scheduled for the last week in February. Mr. Schwartz did not respond.

16. During Open Door's efforts to conduct the physical inspection of the Property as provided under paragraph 12 of the Agreement, Seller declared his intent not to comply with the Agreement.

17. Open Door received an email from Mr. Schwartz on February 15, 2022, stating that Seller no longer wished to go through with the sale and that it "would like to rescind the contract for sale of Sun Lake and Stardust." Mr. Schwartz further stated in his email, "I understand we are in the DD period and you have already commissioned various parts of your DD but we would like you to cancel what is possible and we will reimburse your costs. Would you be agreeable to this?" Mr. Schwartz provided no just excuse or explanation for requesting to rescind the Agreement.

18. In compliance with the Agreement, Open Door continued with its diligence efforts.

19. On February 16, 2022, DDP followed up with Seller's broker, Richard Spreiser, via telephone, who confirmed that Seller was trying to rescind the Agreement and that Seller would not be available for any due diligence meetings.

20. DDP again emailed Mr. Schwartz on February 21, 2022, requesting a coordination call in advance of the onsite inspection scheduled for February 26th. Mr. Schwartz did not respond.

21. On February 22, 2022, DDP sent another email to Mr. Schwartz requesting a telephone call in advance of the onsite visit scheduled for February 26th. Mr. Schwartz did not respond.

22. DDP followed up with a telephone call to Mr. Spreiser on February 22, 2022, who stated that getting a response from Seller is not likely. DDP and Open Door rescheduled the onsite inspection for March 7th.

23. DDP left a voicemail for the onsite manager at Sun Lake on March 2, 2022, notifying Sun Lake that DDP was coming for an inspection on March 7, 2022, and requesting the onsite inspection of the Property.

24. Open Door texted Mr. Spreiser on March 2, 2022, to inquire if he had heard anything from Seller about the inspection scheduled for March 7th. Mr. Spreiser stated that he had not heard anything from Seller.

25. On March 4, 2022, DDP texted and left another message for Seller's onsite manager requesting onsite inspection of the Seller-owned homes on the Property.

26. Open Door texted Mr. Spreiser on March 7th, asking him if he had heard anything from Seller. Mr. Spreiser stated that he had not. Open Door informed Mr. Spreiser that DDP was onsite but was not able to access the Seller-owned homes on the Property. Mr. Spreiser responded, "I am sure he will put up as many roadblocks as possible."

27. Open Door received a voicemail from Mr. Schwartz on March 7, 2022, stating that he "is not interested in moving forward with this deal."

28. DDP visited the Property on March 9, 2022. DDP spoke to the onsite manager and requested access to all the Seller-owned homes for a physical inspection of the assets of the sale. Of 176 Seller-owned homes, DDP was denied access to all but 31 unoccupied Seller-owned homes.

29. Seller's conduct has prevented Open Door from completing its due diligence under the Agreement.

30. Based on information and belief, Mr. Schwartz has openly declared his intent to dishonor the Agreement and has reached out to other brokers and received other offers to sell the

Property in breach of the Agreement. Also based on information and belief, Seller received these other offers in early to mid-February, just prior to Mr. Schwartz' February 15th email.

31. Open Door has incurred at least the following expenses totaling over $1 million in connection with the purchase of the Property:

| | |
|---|---|
| Deposit in Escrow | $1,000,000 |
| Phase I Due Diligence | $5,000 |
| Survey | $20,000 |
| Appraisal | $7,500 |
| Offsite Diligence | $18,550 |
| Onsite Diligence | $38,100 |
| Transaction Counsel | $20,000 |
| Lender Fee | $2,000 |

32. On March 15, 2022, Open Door's counsel sent a notice to Seller that Seller is in default under the Agreement and demanding written confirmation that Seller is ready, willing, and able to perform. Open Door's counsel also demanded that Seller cease and desist from interfering with Open Door's due diligence efforts.

## SPECIFIC PERFORMANCE OF THE AGREEMENT

33. Open Door incorporates Paragraphs 1-32 above as if set forth herein.

34. Open Door has substantially performed all its obligations under the Agreement and satisfied all conditions precedent.

35. Seller's actions have prevented Open Door from completing its due diligence and closing the sale of the Property.

36. By its words and actions, Seller has declared an unconditional intent not to perform the Agreement according to its terms and has thus absolutely repudiated the Agreement.

37. Seller's absolute repudiation of the Agreement and blocking Open Door's due diligence efforts constitutes a default under, and breach of, the Agreement.

38. As a result of Seller's default and breach, Open Door has been damaged because it has been denied its bargained-for right to own the Property.

39. Because the Property is unique, monetary damages are inadequate to compensate this loss.

40. The Agreement provides that in the event of a default, "Buyer may employ all legal and equitable remedies."

41. Open Door is ready, willing, and able to timely perform all its obligations under the Agreement. Open Door's performance under the Agreement would have been tendered to Seller but for Seller's default and absolute repudiation of the Agreement described above. Open Door is, therefore, excused from any pre-suit tender of performance and entitled to judgment granting specific performance of the Agreement.

## DECLARATORY JUDGMENT

42. Open Door incorporates Paragraphs 1-41 as if set forth herein.

43. Pursuant to Texas Civil Practice and Remedies Code § 37.001(a), Open Door requests a declaration from this Court regarding the rights, status, and other legal relations under the Agreement.

44. Specifically, Open Door seeks a judgment declaring that (1) the Agreement is in effect and is valid and enforceable and has not been terminated; (2) Seller's attempt to rescind the Agreement by declaring an unconditional intent not to perform the Agreement according to its

terms constitutes a default and breach of the Agreement; and (3) Open Door's rights under the Agreement that have not yet been exercised are in full force and effect, including Open Door's rights to the full 45 days of due diligence afforded it under the Agreement, its rights to receive the warranty deed for the Property, and its right to close the transaction contemplated by the Agreement.

## MONETARY DAMAGES FOR ANTICIPATORY BREACH OF THE AGREEMENT
### (In the Alternative)

45. Open Door incorporates Paragraphs 1-44 above as if set forth herein.

46. Seller absolutely repudiated the Agreement by declaring an unconditional intent not to perform according to its terms and preventing Open Door from completing due diligence and from closing the sale of the Property.

47. Seller's absolute repudiation of the Agreement was without just excuse.

48. As a result, Open Door is entitled to judgment for money damages, including without limitation Open Door's costs of performing the Agreement of more than $1,000,000, additional direct or consequential damages to be proved at trial, and in excess of $10,000,000 of profits Open Door lost from not owning the Property.

## MONETARY DAMAGES FOR BREACH OF THE AGREEMENT
### (In the Alternative)

49. Open Door incorporates Paragraphs 1-48 above as if set forth herein.

50. Open Door performed or was legally excused from performance of all its obligations under the Agreement and has satisfied all conditions precedent.

51. Seller is in default of the due diligence provisions of the Agreement. Seller also declared an unconditional intent not to perform the Agreement according to its terms.

52. Accordingly, Seller has breached the Agreement, causing Open Door damages. As a result, Open Door is entitled to judgment for money damages, including without limitation, Open Door's costs of performing the Agreement of more than $1,000,000, additional direct or consequential damages to be proved at trial, and in excess of $10,000,000 of profits Open Door lost from not owning the Property.

## ATTORNEY'S FEES

53. Open Door incorporates Paragraphs 1-52 above as if set forth herein.

54. Open Door engaged the undersigned attorneys to bring this action for declaratory judgment and to enforce the Agreement.

55. Open Door gave Seller written notice of its claims under the Agreement.

56. Pursuant to Sections 37.009 and 38.001 of the Texas Civil Practice and Remedies Code, Open Door is entitled to recover its reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment:

For specific performance by Defendants of their obligations under the Agreement;

Declaring that (1) the Agreement is in effect and is valid and enforceable and has not been terminated; (2) Seller's attempt to rescind the Agreement by declaring an unconditional intent not to perform the Agreement according to its terms constitutes a default and breach of the Agreement; and (3) Open Door's rights under the Agreement that have not yet been exercised are in full force and effect, including Open Door's rights to the full 45 days of due diligence afforded it under the Agreement, its rights to receive the warranty deed for the Property, and its right to close the transaction contemplated by the Agreement;

In the alternative, as a result of Defendants' anticipatory breach of the Agreement, for Open Door's costs of performing the Agreement of more than $1,000,000, additional direct or consequential damages to be proved at trial, and in excess of $10,000,000 of profits Open Door lost from not owning the Property;

In the alternative, as a result of Defendants' breach of the Agreement, for Open Door's costs of performing the Agreement of more than $1,000,000, additional direct or consequential damages to be proved at trial, and in excess of $10,000,000 of profits Open Door lost from not owning the Property;

Reasonable attorney's fees, costs of court, and prejudgment and post-judgment interest, to the extent permitted by law; and

Such other and further relief to which the Court deems just and proper.


Dated:  March 24, 2022

Respectfully submitted,

BAKER BOTTS L.L.P.

*/s/ Jessica Bateman Pulliam*
Jessica Bateman Pulliam (Texas Bar No. 24037309)
Jessica.Pulliam@bakerbotts.com
Catherine A. Brandt (Texas Bar No. 02565200)
Cathy.Brandt@bakerbotts.com
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Telephone: (214) 953-6677
Facsimile: (214) 661-4677

Attorneys for Open Door Capital, LLC